We now hear argument in the Welch case. You're back. I'm back. I know, I feel like I should have put on a hat or something. May it please the Court, Alexandra Robert-Gordon, still from the Office of the Attorney General, on behalf of Appellants. So the Welch case presents a subset of the issues that we've been discussing. Specifically, it also requires the Court to determine the appropriate standard of review to apply to a State regulation of a mental health treatment that may involve, although it does not always involve, talking. As I've said, given the overwhelming consensus that sexual orientation change efforts are scientifically invalid, ineffective, and potentially very harmful, it could pass any standard. But here, the correct standard is But we're dealing here with a premier injunction, right? Yes. And all the presumptions in this case run in favor of the injunction, right? I mean, the district court entered an injunction. There's an abuse of discretion. If there's doubt, it's not permanent. You know, this is preliminary. It's only for the duration of the litigation. So it's not a forever decision. Why is it an abuse of discretion under a highly differential standard for the district court to say we're going to hold things in place until these difficult questions can be litigated to conclusion? That's really the question, right? Right. Because the district court's determination of likelihood of success on the merits is based on a clear error of law, which gets de novo reviewed. So the question of is this speech, is the First Amendment implicated? What level of scrutiny is appropriate? Those are for you to decide. To agree with you on that, we'd have to say it's a slam-bang, clear-cut error of law. The statute is clearly constitutional, no doubt about it. The district court couldn't say, gee, I think there's doubt here. I think this is a closed case. Because if the district court is right that this is a closed case, then you don't have a clear error of law, right? It's a prediction about the likely outcome of the case. Yes, but the prediction depends on pure questions of law, which get de novo reviewed. So the question here is still right or wrong. It's still a prediction. It's still a prediction, unless we have sort of rule on the ultimate merits of the case, and we've held that it's not appropriate for a panel on a preliminary injunction case to actually dispose of the merits. So we're making a prediction. We're looking at the future, seeing how is the case ultimately going to come out. If the district court looks at it and says, well, yeah, it's sort of closed, and maybe the statute will be held unconstitutional, I'll hold things in place. Why isn't that what district judges do all the time? And we say, okay, why isn't that our job here? That isn't your job here, again, although normally in a preliminary injunction, of course, this court wouldn't go to the merits and wouldn't reweigh them. It does reconsider pure questions of law. And this really isn't a case about conflicting evidence or about issues of fact that came up. This is a case about, is this speech? And what standard do we have to apply in assessing it? And so the district court's determination is based on these errors of law. The failure to determine whether or not there's a difference between speech that occurs in treatment and expressive speech or any kind of speech in between, assuming that content and viewpoint analysis applied, wrongly applying it even if it did apply. These are all errors of law. They really don't require the court to sort of reweigh the record. So in your view, it's not, even though in some other context, two district judges reaching opposite conclusions on a preliminary injunction might be allowed to go in those parallel tracks. We have these two cases, and they reached opposite results, both on preliminary injunction. So am I understanding your argument that we really have to pick? We can't say that neither judge abused discretion. We really have to pick because it's an issue of law. Yes, Your Honor. I'm not sure how, I mean, either this is First Amendment-protected speech or this is treatment or something in between, and either it gets a rational basis review, as the district court in Pickup found, or it gets strict scrutiny. Why can't we say, look, we don't know, it's close, it's a difficult issue, we've got lots of Supreme – I mean, we've got the Supreme Court case in Brown, we've got Cornett, we've got Knapp, and so the legal issue is truly difficult. We don't get to decide it. We just get to predict how we think it's going to come out. We look at it, and we say, gee, you know, it's possible it'll come out one way, it's possible it'll come out the other way, in which case – and if that's where we are in our thinking, then the conclusion would be both district judges are okay. They both sort of reached a different conclusion about a future event as to which we can have no certainty and no obvious discretion. That would be a simple answer to both cases, wouldn't it? Certainly in this case, right? I don't think it would be the correct answer, though, to both cases. It's not the answer you would like, sure, but why isn't it the correct answer? I don't think I can improve upon saying that because I think this Court is going to be required to decide some basic questions of law, should this Court decide, however, to take the approach that you've taken, it might not be what I would like, but of course I would live with it, and I would not go too far trying to persuade you otherwise if I have not been able to do so already. It wouldn't have – this case only applies to three named plaintiffs, right? Yes. Okay, so this is not – this would not in any way be in contravention or in conflict or with – inconsistent with respect to – as with other case which dealt with everybody else in the State. This would just be something that would apply to three individuals, right? Yes. What would be the harm from saying, okay, we'll leave the injunction in place as to these three individuals? Well, I'm not sure what the harm would be, but I'm not certain how you could achieve that result because – Oh, I understand. That's a question you would like to answer, but let me ask the question that I asked. I – What would be the harm? I know you'd like to answer a different question, but why don't you ask my question? All right, I will try. So what would be the harm would be – I see. This is sort of like, gee, I think it's really irrelevant, Judge, but I will try to do it anyway. Sometimes you come to court and you get asked questions you think are irrelevant. You've got to come up with a good answer anyway. That's being a lawyer. Your Honor, I will answer any question that you like. Just to make – you know, just – you know, we're sitting here looking, we're sitting in equity, we're reviewing a district judge's ruling, and we have to consider the scope of the injunction. This applies to millions of people and all that. It would be one thing. And this one applies to three individual practitioners and their patients, right, a small handful of people. And so that raises the scope of the problems much smaller. So what would be the harm of saying, you know, district judge ruled, you know, had doubts. We'll leave it in place until the case is ultimately decided. Can't be too long. I mean, how long is this case going to take to resolve ultimately? I don't know, Your Honor. I don't mean our appeal. No, I know. The case as a whole. A year or two years. I don't know. It's stayed for the moment pending appeal, so it is not progressing. Obviously, the fact that the injunction only applies to three people limits the presumed harm to the State of enjoining a duly enacted statute. I understand that. And clearly, the district court was within its discretion to limit the injunction to tailor it as he saw fit. However, the only finding of harm to those three plaintiffs is constitutional injury that we submit doesn't exist because there is no appropriate First Amendment analysis here. There is no First Amendment injury. So it's merely just that the entire basis for giving the injunction to those three plaintiffs is unsupported. It's wrong. So that is the harm. Kagan. Kagan. I'm not sure about that. When you say there is a clear error of law for purposes of this analysis in light of the NAAP case where we said this type of conversation, I'll say communication, in a psychotherapist-patient relationship is entitled to some first degree protection, where is the clear error of law? The clear error of law is failing to ask, well, what type of communication is this and how much protection does it get, and then assuming that every time a professional is talking, particularly if they have a viewpoint, that that is somehow expressive speech or conduct that is entitled to the full amount of First Amendment protection. The district court simply looked at the first part of the sentence that it's entitled to First Amendment protection, completely disregarded the second half, which says it's subject to reasonable regulation by the state, totally missed sort of the next few pages talking about the state's near-plenary power to regulate practice and how it's not diminished simply because someone's speaking, and then compounded it by saying, well, clearly this is expressive, and then clearly, you know, because the legislature has decided agrees that this is an incompetent practice, that's obviously content and viewpoint discrimination. That's the, those are the clear errors of law. So a few, a few things. In that, I think what it gets back to is what is the line where that communication begins, where the communication that is more protective begins, and so what is the line between Knapp, where we know that some communication is protected, treatment arguably really subject to rational basis, and Conant, where we're talking about speech, professional speech that is entitled to a great deal of protection. Conant, of course, deals with recommendations, information, discussion that's all part of competent medical care. And we know that that gets heightened scrutiny and it's not going to pass it because the government's not even pretending to be regulating for the health and safety. The government has a message. Kagan. Is it the State's position that it's even covered by this piece of legislation? It is not. It is absolutely not. So the State's position is that the only thing that's covered by this piece of legislation is the treatment itself. So presumably, we need not decide, in your view, what level of protection is involved with the preparatory discussions or the statements of opinion about whether this form of practice is or is not a good idea, because it's not at issue. That would be, it sounds like, your view. That is our view, that it is not at issue. However, I understand that that's contested, and if the Court were to look at it, I would just point out that while clearly recommendations, information, triggers a higher level of scrutiny than merely banning the treatment itself, the district court in Conant made very clear that a recommendation to rely on quack medicine would not be protected by the First Amendment, and there's absolutely nothing in the Ninth Circuit opinion that suggests that any disagreement with that statement. So I guess what I'm trying to say is that even if the Court were to find in some way that recommendations were covered, which they're not, that wouldn't necessarily mean that this is a First Amendment violation, because we are talking about a practice where a substantial body of evidence, consensus of every major professional organization says this is incompetent care. To just say a few more things, and then I'd just like to reserve the rest of my time. In terms of what kind of evidence that the State would need, the Court was very critical of the evidence provided. First of all, as I've said, I think it's a misreading of the APA report, because if you look at pages 79 and 80 of the APA report, which is specifically talking about children, in no way does it suggest that further studies should be conducted. What it says is don't do it. It should not be done, actually, on minors, which I think is rather strong evidence of their feelings about it. There's nothing you can do. Sotomayor, you refer to the APA report? The APA report. I keep looking for that. Where does it say that? The APA report, it's on page 79 to 80 where they're talking about minors. It's also in the resolution, which is at the end of the APA report, where they recommend doing competent therapies as opposed to sexual orientation change effort therapy. What page is the last thing you just had? So the APA report, if you're looking at the Welch excerpts of record, look at page 79 to 80 of the report, the internal pagination. I see. And what's the ER? So I don't know the precise. I'm sorry that I don't know the precise ER site, but it starts at 143. Okay. I'm sorry. I see the page. It's 53. Okay. It's ER 229. And the first thing you saw there? ER 229. If you look in the conclusion, it's in the chapter regarding SOCE to minors. And the conclusion basically is that it shouldn't be done. Just to point out before I save the rest of my time, unless the Court has any questions, that it would not, given what we know about the harm and the complete lack of benefit of SOCE at this point, it would not be possible to get the kind of scientific study that the District Court seems to be calling for, because it's obviously unethical to subject people, let alone minors, to random, double-blind studies, and then when they become suicidal, we'll know for sure that this is actually a harmful practice. No review board would ever sanction that kind of experiment, and Where on page 229? On page 229? Yeah. Okay. It's on the conclusion, right? Yes. Where? So here, sorry, 230, if you look towards the top of the page, we recommend that licensed mental health practitioners provide multiculturally competent and client-centered therapies to children, adolescents, and their families, rather than SOCE. And then they go on to explain why. And in the preceding page, they  say, we recommend this, rather than that. That's quite different from saying that shouldn't be done. So that's what I'm asking, since you made that presentation. Right. If you also turn to ER 269, that's the resolution where they're very clear that it shouldn't be done. I'm turning to a question. What does it say there? So here is where it's rather wrong, but it goes through just saying that on the basis of what they have found, that they feel that there are significant concerns about the lack of proof of efficacy and the reports of harms, and that they recommend other types of therapies, as opposed to SOCE. This should not be done. Again, it's one thing to recommend other things, and quite different from saying this is bad or this should not be done. And where is the should not be done part of it? Well, I would say that the strongest piece of this should not be done here is in ER 271, where they're not so much saying don't do it, but they are, at least the APA, other organizations have said don't do it, and that is all actually in the legislative findings. But if you look here, they do advise parents, guardians, young people, and their families to avoid sexual orientation change efforts. There's a pretty good consensus. It's a big page. Where do you read that? Okay. Go to. I'm at 271. To 271. All right. And if you go down towards the bottom of the page on the right-hand column, be it further resolved. There are several be it further. Sorry, it's the second from the bottom. Okay. But the American Psychological Association advises parents, guardians, young people, and their families to avoid sexual orientation change efforts that portray homosexuality as a mental illness or developmental disorder, and to seek other kinds of therapies that are actually competent. I see. So if it doesn't treat homosexuality as a mental illness or developmental disorder, then it would be okay. This does not say it's bad, right? It's a hallmark of sexual orientation change efforts to treat homosexuality as an illness or a pathology. That's the premise of these therapies. All right. But if it doesn't, then it's okay under this, right? There's nothing in this report that suggests that SOCE in any of its forms is okay, Your Honor. No, no. But it doesn't say don't do it if it doesn't have these two features, right? I'm just trying to understand the evidence. I'm not arguing with you. Right. It doesn't specifically say don't do it. It just says engage in competent care that looks absolutely nothing like SOCE. It doesn't specifically say it. It usually means it doesn't say it, right? Right. Okay. Thank you. We'll see. We're here for opposing counsel. We've got a minute. No, a minute for rebuttal. I'm just noting the time for rebuttal. A minute and five seconds. Good morning. Good morning. Kevin Snyder, Pacific Justice Institute for the Appleys, Drs. Welch, Duke, and Mr. Bitzer. May it please the Court. The Supreme Court recently said that the First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good. And this was Brown? This was actually Sorrell, S-O-R-R-E-L. Which was a pharmaceutical case, I think. Yes. That being said, there are a number of points raised in our briefs, and they all deserve the Court's attention. But based on the prior discussion, I'd like to direct the Court. You've seen the amicus brief. I like to read these green briefs. Okay. Not all of my colleagues. I'm not speaking of these colleagues. I know there are some judges who don't like green briefs. I find them very helpful. I appreciate that. And if anybody out there has written one, thank you. Okay. Yes, thank you. Okay. I was just saying I only want to speak for myself, but I'm glad my colleagues here agree. There was the law professor, the First Amendment scholars' brief in support of defendants. And they cite from Robert Post, who is currently dean of Yale Law School, but more importantly he was a professor at Berkeley for many years. So, you know, even though he left California, we still appreciate his writings. And he says, I think something that's, I mean, they have a quote here which sort of struck me. It says, Vast stretches of ordinary verbal expressions, for example, between dentists and their patients, between corporations and their shareholders, between product manufacturers and their customers, are not considered necessary for the formation of public opinion and are consequently excluded from First Amendment coverage. Robert C. Post and so on. There's a citation there. Help me answer this. I mean, this is regulation of professional conduct. I think the answer is when you look at when legislation has an ideology or an idea that it is focusing on, then you can't go there. But if it's content neutral, then you can regulate it. I don't think that's responsive at all. What the professors are saying, citing Dean Post, is there are some areas of communication that look like speech, but because they are professional in nature, like when a corporation puts out a, I don't know, I've never practiced that, but a 10K or, you know, or a... Prospectus. Prospectus. Thank you. You're welcome. Prospectus. You know, one of those prospectus trying to get shareholder votes. They are, it's not really free speech. You know, they are highly regulated and there are all sorts of things the SEC can say about what goes in and what goes out of that. Why isn't this even more? I mean, this deals with not just money. It's not mine. Mine's in the car. It deals with what the legislature solemnly, I mean, looked at it and decided this is harmful to children. And this is professionals whom we license, whom we give, we as a state give a special status that gets people, gives people confidence in them because they're licensed by the state and they're doing stuff that we think harms their patients. Why can't they just say no? It's not going to happen. With all due respect to the professor, I believe that's inconsistent with this court's holding in Knapp, specifically regarding psychotherapy. And now, I can't speak to other professions, but I can speak to what this court has said about mental health providers. And they're saying in Knapp, Knapp holding is very, actually very simple, that what is the communications made within therapy are protected. Again, I can't speak for prospectives or other professionals. But on the other hand, the as far as regulations, the Knapp holding is simply that the pool of applicants can be regulated. But again, those are content neutral. Well, but you have to speak to things like prospectuses. You know, just saying you can't speak to it doesn't help us any because what we say in one area, this is the way the law is. It's like water. It finds its level. And if we say certain things about speech involving professionals, this will spill over. It can't be kept for, you can't just say it applies only to psychotherapists. Obviously, it applies, it will apply immediately to doctors. It will almost certainly apply to lawyers. It applies to all other professionals. How do you deal with that? Well, I guess, then if the court's asking me to take a position on other professions, I would say that the professor's position is inconsistent with this court's position in Knapp. Is your position that our opinion in Knapp applies to all of the communication that happens in the course of a relationship between a patient or client and a mental health therapist? Yes, that would be our position. All of it? I believe so, yes. I could speculate, perhaps, on things like the mental health history that people fill out. What if we juxtapose Knapp with and layer on top of that Conant? Doesn't that tell us that there's a different type of speech when we're talking about the pros and cons of whether to engage in the therapy? Or do you not espouse that view? I don't espouse that view. Why not? I think that they are all speech. Now, let me – I do think there is an issue about different professions when you're talking about a medical doctor. You can prohibit certain drugs like Laetrile or something like that, and the doctor can't prescribe that. The doctor could recommend it. Right. Well, why do we permit that kind of restriction? Because those are – those things go through an FDA process, a long vetting process, very regulated, and they have physical effects. So this gets back to your position is that the legislature didn't have sufficient evidentiary support for its findings. Is that right? Yes. Well, yes. Well, for one thing, it doesn't matter. You had asked in the earlier – I eavesdropped on the prior case about what deference should we show the legislature. And my view is underground versus entertainment, I give them very little deference when it comes to the content of speech. So all of your arguments really depend, though, on an assertion that treatment that consists of talking is speech, like regular expressive First Amendment speech that's entitled to full protection. And it seems to me that that premise is undermined by the NAAP case, which says that it's not immune from regulation. NAA – let me answer you with NAAP and Holder. First, with NAAP, that ruling was simply this. The California licensing scheme is content neutral. It determines the pool of mental health providers, and that is – and therefore, it does not implicate the First Amendment. However, the communications within psychotherapy is implicated by the First Amendment. That's the holding of NAAP. Going – now, going to – I think your main question, and this has come up several times, is conduct versus speech or perhaps treatment versus speech. Our position is that is a false dichotomy. And we would point the Court towards a Holder versus humanitarian law project. That is the very argument that the government, the Federal Government, made in that case. That case involved material support. It could – it was the key part of the statute. And the Court said, look, yeah, material support can be providing bomb-making materials. It could be providing – writing checks. But it also involves communications. And when it involves communications, even though it's conduct, it is also speech. So we believe that there is a false dichotomy to simply say it's either conduct or it's speech. A Holder just rejects that outright. And that's at – I would direct the Court to page 2724 of that opinion on that issue. Sotomayor, you would agree that there's a long line of cases, both from the Supreme Court and this Court, that permit the regulation of professional conduct, including conduct that involves speech, by regulating what lawyers can say and how they can act and what they have to tell their clients about, for example, potential conflicts of interest, compelled speech. So how do you reconcile that? Where do you draw the line? Yes. The main case on lawyers is Oralec, I believe is how it's pronounced. And in that case, the Court said, look, look, this is – lawyers are essential to the administration of justice, to our system of government. They are officers of the Court. And, yes, we're going to regulate them on their speech a bit more. And so that's how I would differentiate that. But doctors and therapists also are regulated. For example, it's – I presume in California, although I haven't researched this, it would be unethical for a practitioner to engage in a treatment without the patient's consent. And the obtaining of consent is an oral exchange or a written exchange of words. And so that's an example of a regulation of the medical profession or the therapeutic profession in what may be said or must be said or may not be said. And so how do you reconcile that kind of regulation with what you're asking for here? Yes. I would reconcile those in this way. Those types of statutes are content neutral. They don't attack an idea. This does. That's the end of the discussion. To get to content neutral, even being relevant, it has to be a certain kind of protected speech for content neutrality to be a relevant inquiry. Again, I guess there is a – our position is a disagreement with the concept, the premise that conduct – that you have to determine whether or not this is conduct first before you can get to speech. Or in other words, if it's conduct, then we don't deal with speech. Or if it's speech, it's not conduct. We say, no, it could be both. I think what Judge Graber is suggesting is that the decision about speech comes before the decision about content neutrality. I'm sorry. It's the inverse that we keep hearing today. That the pivot point in the decision tree starts with whether this is speech or not, whether SOCH is speech, before you get to content neutrality. Yeah. Well, again, our view is that this is – SOCH is – treatment is parallel to material support in the Holder case, Holder v. Humanitarian case. You agree that – I think you agree. I don't mean to – I mean, you can disagree if you want. But I think you agree that the States, so its regulatory agencies, so the legislature, can change the standards of conduct for a profession. It can, for example, if it chooses, have an attorney-client privilege or not. Right? There's nothing – if the legislature tomorrow decided not to have attorney-client privilege. I mean, there might be Sixth Amendment problems in criminal cases, but it could change the standards of the profession, right? Right. As long as it – I'm sorry. And for example, when it comes to psychoanalysts, remember Tarasoff? I'm sorry. Say again. Tarasoff. Tarasoff. It's a famous case in California. Maybe you're not – I don't believe I saw it in the briefs. I'm sorry. It probably was in the brief, but most of us learned about it in law school. Okay. Sorry. I don't think you went to law school that much earlier than I did. Maybe later. Anyway, Tarasoff was a case where the patient confessed their desire to kill somebody and the psychotherapist maintained confidence as the professional required them to do, and then the patient carried it out and the therapist was held liable. So that changed the nature of the psychotherapist-patient relationship. Now, it happened to be the Supreme Court of California that did it rather than the legislature, but there's no difference. The state, through one of its regulatory bodies, changed what could be said and what could be confidential and what has to be disclosed among patient and psychotherapist. So I'm just wondering why this isn't just like that. The state decides to change the standard of conduct for a profession. Why isn't that? It's sort of a simple adjustment. I think that my answer is they can if it's not content-based. In other words, they could say... But it's always content-based. In Tarasoff, the content was disclosure of a confidence that the person intended to commit murder or mayhem and it was credible. So, but if they intended to do something else, the content would be protected. So, I don't understand that. Well, I guess my caveat to that would be if the state can show a compelling state interest, then, yes, they can go to content. So, like if someone is going to commit, eminently commit a crime, and then the psychologist or psychiatrist should, I think, can have a regulation that says, yes, you've got to pick up the phone and call. And I think that is a compelling interest. And so, yes, I would... But normally, content-based, they can't do that. In this case, for example, if there is a claim that SOCH is not scientifically based, why not simply have a statute that says any type of therapy that is not based on proven science cannot be engaged in with the minor. That's content-neutral. And, in fact, there is something in the Business and Professions Code, Section 651, which was cited in the state's brief, that mentions that. Of course, that would be problematic because a lot of, as has been the colloquy, the previous colloquy, a lot of psychiatry is unproven. You can't prove that there is an id, ego, or superego or that there is Piaget's hierarchy of needs or anything such as that. But nonetheless, that is content-neutral. And you could do that. And the state could, presumably, do that with minors. Counsel, could I shift gears a little bit? We've talked a lot today about legislative findings and the evidentiary support underpinning them. And specifically, I think we focused on the findings that this type of therapy may be harmful. The legislature also had evidence before it that this type of therapy may not work. What's your strongest evidence in the record for the statements I've heard earlier today that some people have benefited from this type of therapy? Well, the record, if you say the record, I would say that there is not much in the record. Because we're talking about a facial challenge to a statute. In the filings with the court, which is different, there has been amicus brief that says X and an amicus brief that says Y. And indeed, in one of the filings, there's a Herrick Declaration. It's one of the declarations filed in our case. It says actually that a small percentage of individuals involved in social treatment experienced change. And that's in the record at 379. Is that the answer to my question, that's your strongest support that this can be effective? Our position is that it is, that that's, no, no, no, that the evidence is equivocal, that we don't have the burden of proving that it's effective or not effective. The issue is does the State have a compelling State interest? And under Brown, we think that they can't rely on mights and maybes. So what just happened is I asked you for the strongest evidence in the record in support of your client's position, that this treatment can be effective, and what you're telling me is you don't have the burden of showing that? We don't have the burden of showing that. So just humor me, if you would, please. Okay. Is there something in the record that you would point to as the strongest indication that this can be effective? We have, no. We have not, that was not at issue in the lower court and we did not provide evidence. We're not in summary judgment stage. We're in preliminary injunction stage and we're doing a facial challenge. We do not concede that we don't have any evidence. We're just saying that was not at issue and we didn't put that pitch into play. All right. Well, maybe I misunderstood the question, but if I did answer my question, never mind what's in this record, what's in the legislative record? Oh. Which is now closed. What is the best thing you have in the legislative record? Yes. As to the effectiveness. We keep hearing that there was unanimous opinion among medical associations. That's actually not true. In the record there were, there was the American College of Pediatrics opposed this as was the Catholic Association, Medical Association as did. They found on Amica's brief here that they also appeared before the legislature? That is in, that's in the legislature, yes. And I could point that to the record if you'd like. If you'd give me a moment to. Can I just amend the question? Because I think it has to do with what evidence there was rather than what opinions there were. The evidence of efficacy. Yeah. That, this did not, was not put on trial in the motion for preliminary injunction. Now we're going back to the legislative record. Okay. I'm sorry. The legislative record, you asked. Evidence. Of the evidence. And let me see if I could find it. I believe it is at 300 and. What is it? I'm sorry. It is three organizations, medical organizations, that say that were opposed to this bill. Because they think that there's some benefit to be gained from SOHC? Because that's what I'm looking for. I would say yes, but that's not in the record. It just says that they oppose this bill. Did the legislature have any evidence before it that this type of therapy can actually change a person's sexual orientation? Yes. What was it, please? There were, there were, there was testimony, but that was not, that did not appear in the record. So these are personal testimonials? These are personal testimonials. Oh, and I'm sorry, also we have, forgive me, we have Mr. Bitzer, who was our client, who did provide a lengthy declaration about how SOHC has helped him. Thank you. You're familiar with the Spitzer study, right? Yes, I am. And that Dr. Spitzer retracted his original findings. Dr. Spitzer, the evidence on that is this.  This was in the Equality California. Correct. Correct. That evidence is an article from the New York Times, and it's a three-and-a-half-page deposition. We objected to those. We don't think it was an abuse of discretion. The judge did not rule on our objections. We don't think it's an abuse of discretion for him to say, to say, well, ignore that, that it's not proper. Furthermore, if you look at his, at his deposition, not long, he does not provide a, a, another study which disproves his first study. He has these, these regrets of an old, of a, of a, of, has these, these, he discusses his feelings, his regrets, rather than his findings. Doesn't he, doesn't he discuss his methodology? He discusses his methodology, but he doesn't provide a study. You made a comment a minute ago about an abuse of discretion. Do you mean you think it wasn't an abuse of discretion for this evidence to be considered? I think the judge did consider everything. But, but he, he looked at their, he did not sustain our objections, so I assume that he looked at everything. And, and, and we have to remember, and I'm sorry, my time has expired and I apologize for that, is that the, the appellate, the estate has not challenged the findings of fact. And that's in, and that's in their brief at, at 21. So I, I don't, I don't believe that, that, that, that that could be, there's any abuse of discretion as to that. My time has expired. Thank you. Thank you. You have the better part of a minute left. Oh, actually, a minute and five seconds. All right. I'll be, I'll be quick. Does the legislature have any evidence that this type of therapy can work? No, Your Honor, not any meaningful evidence. And it's Chapter 3 of the APA report that explains sort of the methodological limitations and why we should be skeptical of personal anecdotes that SOC has worked. There's actually no evidence, and most of the evidence is to the contrary. That goes most ways. Most of the evidence as to harm is anecdotal. Most of the evidence as to benefit is anecdotal, right? Not exactly. Most of, first of all, there is evidence of harm that is more than anecdotal. And there are studies that are listed in the APA report such as, I believe, one done by Dr. Beckstead and Morrow, another done by Shudlow and Schneider. Now, these are not the gold standard, but I would say they are the silver standard. There's personal testimonials that people claim this has helped them, right? Yes. But part of why that's difficult is it's difficult to assess what that means. First of all, we don't know the starting point. We don't know actually if these people were bisexual to begin with or, you know, had a passing feeling. We also can't really test it in any kind of empirical way. And we know that there are testimonials of people who this supposedly helped them, and then later they are, you know, revealed or outed as, in fact, continuing to have homosexual affairs. Whereas harm actually can be evaluated in a more meaningful way. When someone goes to therapy, for example, and all the declarations talk about working with a population that's been through SOCE, the client's not making attributions. SOCE was harmful to me. They're showing up and often looking like they have post-traumatic stress disorder or they are suicidal, they are depressed, and the therapist is able to make that kind of a determination about what harm has happened to them. I would just sort of want to say very, very briefly that Holder is completely distinguishable in that the conduct there has a message, whereas we know therapy doesn't. And finally, it is, of course, putting the cart before the horse to say, well, you know, we can do this as long as it's not content-based because, of course, first you need to determine whether or not SOCE is expressive conduct and or speech. But I do think that underlying the district court's analysis and plaintiff's here is the mistaken idea that we're talking about ideology and we're not talking about the suppression of unpopular ideas or what you can say about gay people. We're talking about whether or not the state can require people using its license to be competent and specifically whether or not the state can protect children from a harmful and ineffective practice. I believe that it can. We'd ask that you reverse the district court, please, and vacate the injunction pending appeal. Thank you very much. Thank you. The case is arguably sentimental.
judges: Kozinski, Graber, Christen